INHAB'TS OF STARKS *versus* INHAB'TS OF NEW SHARON.

The *annexation* of a small portion of the territory of one town to another adjoining, is not such a *division* as is contemplated by § 1, part 4, of c. 32, R. S.

And such annexation transfers the settlement of no persons, unless they have a settlement in the town from which the territory is taken, and *actually dwell on the territory* at the *time* of its separation. — APPLETON, J., dissenting.

ON REPORT from *Nisi Prius*, TENNEY, J., presiding.

ASSUMPSIT, for supplies furnished to Moses Pressy and his wife, and to one Rebecca Dyer, between March, 1852, and August, 1853.

The only question in issue was the legal settlement of the paupers.

After the evidence was out, the cause was taken from the jury and submitted to the full Court, with power to draw inferences as a jury might, and enter judgment by nonsuit or default according to the legal rights of the parties.

The Court found the legal settlement of the paupers to be in the town of Industry on March 19, 1852.

On that day the Legislature of the State set off a small part of the territory of Industry, " containing fifteen polls," and annexed it to the town of New Sharon.

On the territory so set off the paupers had in fact resided until they became chargeable to Industry, but did not reside there at the time of its annexation to New Sharon.

*O. L. Currier*, for defendants, cited *Groton* v. *Shirley*, 7 Mass. 156; *Great Barrington* v. *Lancaster*, 14 Mass. 253; *Fitchburg* v. *Westminster*, 1 Pick. 144; *Sutton* v.

*Dana,* 4 Pick. 117; *Hallowell* v. *Bowdoinham,* 1 Maine, 129; *New Portland* v. *Rumford,* 13 Maine, 299; *Smithfield* v. *Belgrade,* 19 Maine, 387; *St. George* v. *Deer Isle,* 3 Maine, 390.

*J. S. Abbott,* for plaintiffs, cited R. S. c. 32, § 1, art. 4; Private and Special Laws of 1852, c. 512, and c. 128 of Special Laws of 1853; *Smithfield* v. *Belgrade,* cited on the other side; *Belgrade* v. *Dearborn,* 21 Maine, 334.

SHEPLEY, C. J. — The paupers appear to have acquired a legal settlement in the town of Industry before a small part of it, containing "fifteen polls," was set off from that town "and annexed to the town of New Sharon," by the Act approved on March 19, 1852. They had resided in that part of Industry annexed to New Sharon, but did not reside there at the time of such annexation. They have no legal settlement in New Sharon, unless the annexation of that part of Industry to it, must be regarded as a division of the town of Industry.

A distinction between annexation and division has existed during our existence as a State. *Hallowell* v. *Bowdoinham,* 1 Greenl. 129. That decision was founded upon a construction of the statute of Massachusetts of the year 1793, c. 34, § 2, mode 10. That section was in substance reënacted in this State; and it constituted the sixth mode of acquiring a settlement under the Act of March 21, 1821, c. 122, § 2. This reënactment must have been made with a knowledge of the then recent decision. Its construction was again determined in accordance with the former one in the case of *New Portland* v. *Rumford,* 13 Maine, 299, decided in the year 1836.

On a revision of the statutes, in the year 1841, the section was again reënacted with a knowledge of the construction, which it had received for twenty years.

It is a well established rule in the construction of statutes, that upon their reënactment after a judicial construction well known, the Legislature is to be considered as hav-

ing adopted that construction by its reënactment without substantial change. Such construction rests therefore no longer upon an opinion of the judicial department. It has a legislative sanction; and judicial tribunals are deprived of any legitimate right to change the law by a new and different construction. This would be to declare, what the law should be, not what it is.

In the case of *Livermore* v. *Phillips*, 35 Maine, 184, the distinction between annexation and division was again recognized; while the remark made in *Hallowell* v. *Bowdoinham*, that a division of a town must produce two or more towns composed of the original territory, was questioned. Yet the case decided was received as authority. If any change of the law be desirable, it should be made by the Legislature. Its long acquiescence may be regarded as satisfactory proof, that no change is desirable.

The proposed change of construction rests upon an abstract proposition, that a town is divided, whether its parts, consequent upon such division, are more or less numerous, are larger or smaller, whether they constitute new towns or parts of new towns, or are annexed to existent corporations.

By the application of such a rule, if a single farm or a small strip of land, on which a person resided, were set off from one town to another to make a straight line between them, the town, from which it was set off, would be divided. This might be mathematically correct. And so the removal of particles from a diamond to polish it, might constitute a division of it; but it is not in such sense, that the word division appears to have been used in the statute.

*Plaintiffs nonsuit.*

Dissenting opinion by

APPLETON, J. — It has been determined by a long series of decisions, that the annexation of a part of one town to another is to be regarded, so far as it may affect the liability of the town to which such portion is annexed, to support

those actually dwelling and having their homes on the part thus set off, in the same light as the incorporation of a new town, and that the settlement of those, actually dwelling and having their homes in the territory annexed, is by the Act of annexation transferred to the town of which such territory becomes a part. *Groton* v. *Shirley*, 7 Mass. 136; *New Portland* v. *New Vineyard*, 16 Maine, 300; *New Portland* v. *Rumford*, 13 Maine, 299.

That annexation is to be regarded as operating like the incorporation of a new town is unquestionably correct. That the settlement of those actually dwelling and having their homes on the territory annexed is transferred therewith, is a proposition in entire conformity with the spirit of the pauper act and the intention of the Legislature.

It has however been decided, in *Hallowell* v. *Bowdoinham*, 1 Greenl. 129, and in some other cases, that annexation does not operate as a division of an old town, and that persons having their settlement in the town of which a portion is annexed and having their last residence in the part annexed, but absent therefrom at the time of such annexation, do not, as in case of a division, follow the territory divided and acquire a settlement in the newly formed town, but retain it in the old town from which a portion has been severed. The decision is based upon the idea that the " division" referred to in the fourth mode of gaining a settlement, as provided in R. S. c. 32, § 1, means, to use the language of MELLEN, C. J., in the case just referred to, only " such a division of a town as shall produce two or more towns composed of the same territory which formed the original town." This view will, we think, upon a careful examination of the statute, be found to be demonstrably erroneous.

Towns are referred to in the fourth mode of gaining a settlement as being, when incorporated, " composed of a *part* of *one* or *more* old incorporated towns." Under the decisions already referred to, annexation is deemed equivalent to such incorporation. In the eighth mode of acquiring a settlement, in the same section, towns are spoken of

as being formed from unincorporated places. These are the only modes of incorporation specified in R. S. c. 32.

A town is divided, whatever may be the disposition of the respective parts, which originally constituted its whole. It is divided, whether its parts, consequent upon such division, are more or less numerous; are larger or smaller; whether they constitute new towns or parts of new towns, or are annexed to existent corporations. Nothing in the language of the statute indicates that the word "division" should receive other than its usual and accustomed meaning, or that any such unwonted and forced limitation should be imposed upon the generality of its signification as to confine it to the formation of a new town or towns out of the original territory into which the old town had been divided. The usages of speech and the just principles of construction alike forbid such a conclusion.

It is doubtful, remarks SHEPLEY, C. J., in *Livermore* v. *Phillips*, 35 Maine, 184, whether the definition of the phrase used in the statute, "upon the division of any town," intimated in the case of *Hallowell* v. *Bowdoinham*, will prove to be entirely satisfactory. It is there said, that it " seems to have in view 'such a division of a town as shall produce two or more towns composed of the same territory, which formed the original town."

" Division" is the separation of any entire body into parts. It does not include the idea of preservation of any previous organization, form or shape. There is no indication, that the word was used in any unusual or technical sense. If a town should by Act of the Legislature be separated into two or more parts, and those parts should be incorporated, or without it, organized into plantations, the Act incorporating the town being repealed or annihilated, would the town be divided? If one part were incorporated into a plantation and the others were left without it, would there be no division? Would it be necessary that the two or more parts should either have any political organization of their respective parts even otherwise designated? If not, can it be in-

correct to speak of a town, as divided, when it has been separated into two parts, because one of them was left without organization and the other was united to another town? The reason of the Court in the case referred to must be regarded as decisive of the one at bar. If a town is to be regarded as divided, when it has been separated into two parts, one of which is left without organization and the other is united to another town, it is difficult to perceive why it is not equally divided, when its respective parts are annexed to other towns, or when of the parts into which a town is divided one part retains the old name and corporate organization and the other is united with some other town.

Now when a town is divided and two towns are incorporated out of its territory, or when, being divided, a new town is formed out of one of the parts into which it is divided and a part of some other incorporated town, it is obvious, that of those, who had a legal settlement in the town before its division, some may be resident within and others without the territorial limits of such town, and that provision should alike be made for the support of those for whom the town may be liable, whether they were resident therein or absent therefrom at the time of such division. It is equally clear, that in the incorporation of the new town "composed of a part of *one* or *more* old incorporated towns," or in the annexation of a part of one town to another, which has been deemed equivalent to incorporation, reference should be had to those having a settlement in the town which has been divided, whether they actually dwelt and had their "home within the bounds of such new town," or not, at the time of such annexation or incorporation.

In the first branch of the fourth mode of gaining a settlement, it is enacted that "upon the *division* of any town, every person having a legal settlement therein, but *absent at the time of such division and not having gained a legal settlement elsewhere*, shall have his legal settlement in that town wherein his last dwelling place shall happen to fall, upon such division." It will be perceived that no reference

whatsoever is made to the settlement of those who were actually dwelling and having their home at this time within the bounds of the divided town. So in the latter clause of the same mode it is provided, that "where any *new town* shall be incorporated, composed of a part of *one* or more *old* incorporated towns, every person legally settled in any town, of which such new town is *wholly* or partly so composed, or who has begun to acquire a settlement therein, and *who shall actually dwell and have his home, within the bounds of such new town,* at the time of its incorporation, shall have the same rights in such new town in relation to the settlement, whether incipient or absolute, as he would otherwise have had in the old town, where he dwelt." If these two clauses of the fourth mode of acquiring a settlement are to be construed separately and as having no interconnection, it will be seen that no reference is had to and no provision made for the settlement of those resident in a town at the time of its division. So, it will be perceived, in the case of incorporation there is an analogous omission to provide for those who, having their settlement in the town divided and their last residence in the limits of the new town, should happen to be resident elsewhere at the date of its incorporation.

But there can be no doubt but that the Legislature intended to make a provision for all having a settlement; as well for those resident in as for those absent from the town divided, at the time of its division; as well for those absent from as for those resident within the new town, at the date of its incorporation. The liabilities of the old and the new town, are determined upon the same principles. The last dwelling place of the individual absent, and the actual residence and home of the person resident, govern and control. This mode contemplates division and incorporation; absence from the town divided; residence in the town incorporated. The part, in case of division, is to be incorporated as a new town, or as part of a new town, and the statute makes no difference in either case. The provisions are double, looking

to both aspects of the case, and making provision for each. Incorporation presupposes division and is its natural and recognized sequence. Division and incorporation are necessarily connected together, in the progress of events and in the mind of the legislator, as part of the same act, and, regarded in this light, provision will have been made for all. In any other view, the work to be accomplished, will have been left half consummated.

If "upon the division of any town" "a new town should be incorporated, composed of a part of one" old incorporated town, this would be deemed a division in accordance with the doctrines advanced in *Hallowell* v. *Bowdoinham*, 1 Greenl. 129, and in such case all the provisions of the fourth mode of acquiring a settlement would have force and significancy. It would be a division and an incorporation; and under the first clause of this mode, those absent would have provision made for them, under the latter, those present and residing in the newly incorporated town would be cared for. But under section first, mode fourth, a town may "be incorporated, composed of a part of *one* or *more* old incorporated towns." Now is there to be a different rule when there is an incorporation of *a part* of an old town and where parts of old incorporated towns are created into a new corporation? If, upon a division, two towns become incorporated and a fragment is annexed to another town or erected into a new town composed of parts of other towns, is this to be deemed a division in reference to the towns formed out of the original limits of the old town, and not a division as to a portion annexed to or incorporated with another town or parts of other towns? Does the fact of a division or not a division depend upon this, whether the part severed from the old town is a new corporation or becomes part of a new corporation? Has the division taken place, when the part severed is made a new corporation, and not taken place if the same part should be annexed to an existent corporation? Neither equality of territorial parts nor of wealth, nor of population is made the test as to whether

a division has or has not taken place. According to the decision already referred to, if the portion severed become a new corporation, the town will be considered as having been divided; yet if a larger portion of the wealth, population and territory of the same town should be incorporated into a new town composed of that and part or parts of one or more towns, this will not constitute a division. So that the severance of any portion may constitute a division, while, if a larger portion be set off to another town, no division will have ensued. A construction leading to such results I do not think admissible.

The fourth mode of gaining a settlement is obviously contemplated by the Legislature as but *one* mode. That is to say, the division of a town and the incorporation or annexation of the parts severed upon division, are but parts of *one* and the *same* transaction. Now the construction given in *Hallowell* v. *Bowdoinham* makes the fourth mode to include two different and distinct modes of acquiring a settlement. In case of a division, where the two parts make distinct corporations, one rule is adopted, and when one of the parts consequent upon division is annexed to another town, another and different rule obtains. By that decision the latter clause is held to embrace equally incorporation or annexation, while the first clause in this mode is limited and restricted in its meaning, so as to include only the single case, where a new town is created out of the part severed from the old. It is difficult to believe such could ever have been the intention of the Legislature.

In *Groton* v. *Shirley*, 7 Mass. 156, and in the numerous cases which establish the doctrine that annexation is equivalent to incorporation, the paupers, whose settlement were in dispute, resided at the time of the division on the part severed from the old and annexed to the new town. They are all corroborative of the construction here adopted; for, by construing the statute as giving the same effect to annexation as to incorporation, they are impliedly authorities for the position that the division, which accompanies incorpora-

tion and annexation should have as broad a meaning and include all cases where a town is divided into parts, irrespective of what may be done with the parts consequent upon such division.

Before the separation no case had arisen, in which the meaning of the word division had received the consideration of the Court. It had been repeatedly held that annexation was to be regarded as equivalent to incorporation in its effect upon those resident upon the territory annexed, but what was to be regarded as a division or what was to be its effect upon those absent from the town divided, does not seem to have received their attention. Most of the decisions will be found to have been made upon the peculiar language of different Acts of incorporation. In none, were the peculiar provisions of the Act of 1793, which are substantially the same as those of the pauper Act of this State, examined in reference to the subject now under consideration.

The first case in which the meaning of the word "division" is limited to the single case, where a new town is incorporated, and is held not to refer to the case where annexation takes place, is *Hallowell* v. *Bowdoinham*, 1 Greenl. 129. In that case neither the language nor the just construction of the first clause of the fourth mode of gaining a settlement were considered by the Court. In the opinion, the case at bar was considered as "virtually settled by the case of *Groton* v. *Shirley*, 7 Mass. 156." But that case neither directly nor impliedly decides what should be considered as embraced within the meaning of the word "division," or what are to be the effects of a "division" upon the settlement of those absent at the time. The reasoning of the Court seems to be based upon the word "annexation," which is no where in the statute. The decision is professedly not upon an examination of the language of the statute, but "on the authority of the cases which have been adjudged as to the point in question." The Court seem to assume that di-

vision and annexation or incorporation, cannot coëxist, when from the nature of things, they always must.

In *Fitchburg* v. *Westminster,* 1 Pick. 144, the pauper was resident in Fitchburg at the time of the division and annexation, but not on the part annexed. Now the statute in the first clause refers to those absent from the town divided, which was not the case of the pauper whose settlement was in dispute. This too is made to rest upon *Groton* v. *Shirley,* and in this the construction of the first clause was not considered or discussed.

In *Sutton* v. *Dana,* 4 Pick. 117, it was held, that a pauper, whose settlement in a town was acquired in a part which was afterwards incorporated into a new town, but whose home at the time of the division was in the other part, did not gain a settlement in the new town. This in no respect conflicts with the views we have advanced.

In *Lexington* v. *Burlington,* 19 Pick. 426, it was decided that under stat. 1793, § 4, upon the division of a town, a person having a legal settlement *therein,* but being removed *therefrom* at the time of such division, acquired a settlement in that town in which his *last* dwelling place in the original town happened to fall upon such division. In that the town of Burlington was formed out of parts of different towns, and the construction given was entirely in accordance with the views we entertain.

In this State, the decision of *New Portland* v. *Rumford,* 13 Maine, 300, rests entirely upon the authority of *Hallowell* v. *Bowdoinham.* In *New Portland* v. *New Vineyard,* 16 Maine, 69, it was decided that when a part of one incorporated town is taken off and annexed to another the inhabitants living on the territory thus annexed, and having a settlement at the time in the town from which they are taken, acquire thereby a settlement in the town to which the annexation is made, and that if an inhabitant, *thus* acquiring a settlement, remove from the territory annexed into a different part of the town to which the annexation is made and there remains until after the Act is unconditionally repealed,

his settlement continues and is not transferred back by the repeal of the Act. The doctrine of the decision is in entire conformity with the provisions of the statute. The pauper was *not* on the territory transferred back and therefore not within the second clause of the fourth mode. He was not absent from the town, of which a division was thus made, and consequently his settlement was not affected by the first clause of the fourth mode. In *Smithfield* v. *Belgrade,* 19 Maine, 387, the Court held that the settlement of a pauper, which is in a *part* of a town which is *annexed* to another, though he be *removed* from such part before the annexation, is transfered to the new town by virtue of stat. 1821, c. 122, § 2, which provides that a person so circumstanced "shall have his legal settlement in that town wherein his *former* dwelling or home shall happen upon such division; thus directly overruling *Hallowell* v. *Bowdoinham.* The Court came to a similar result in *Belgrade* v. *Dearborn,* 21 Maine, 334. The case of *Mount Desert* v. *Seaville,* rests upon *Sutton* v. *Dana,* which, it has been shown, is in no respect in conflict with the views here expressed.

From this examination of adjudged cases, it will be perceived that the authorities are by no means concordant, and that the Court are at entire liberty to reëxamine the questions under consideration, and to adopt such a construction as will be most in consonance with the language and the obvious intention of the Legislature.

From the evidence as reported, it appears that Moses Pressy and wife commenced their residence in that part of Industry set off to the town of New Sharon, as early as 1824; that they there continued to reside till 1836; and that they never lived subsequently in any other part of Industry, except as paupers.

The liability of the defendant town depends on the construction of the first clause of the fourth mode, which provides, that "upon a division of any town, every person having a legal settlement *therein,* but being *absent* at the time of such division, and not having gained a settlement else-

where, shall have his legal settlement in that town, *wherein his last dwelling place shall happen to fall* upon such division."  As Pressy and his wife were absent, when Industry was divided and a portion of it annexed to New Sharon, the rights of these parties must be settled accordingly as the fact where their *last dwelling place* was, shall be determined.

After Pressy and wife moved, in 1836, they were supported as paupers by the town of Industry.  They lived a part of the time on a farm belonging to the town and were under the charge of the overseers of the poor and supported under their direction.  The residue of the time of their residence in Industry they were hired out, to be kept, by the overseers.  When living on the town farm or at Ring's, who was employed to provide for them, they were not upon the territory annexed to New Sharon.  Had they, while being thus supported as paupers, a *dwelling place* within the meaning of the statute ?  If they had, the defendants are not liable for their support; if they had not, then, as their *last dwelling place*, before they became paupers, would be on the territory annexed, they would be liable.

The pauper, who receives aid from the town, while that condition of things exists, is deprived of the rights and privileges of citizenship.  He cannot serve on the jury.  He is not permitted to vote.  He is eligible to no office.  His control over his children ceases.  They may be taken from him and bound to service.  Where he shall reside is no longer a matter dependent upon his own will, but is determined for him by the action of the town or its constituted authorities.  It may be in the poor house, if one there be.  It may be where the person who has contracted to take charge of the poor may reside.  The place where he may live is not one selected by himself, nor is his continuance there the result of his own volition.

The terms " his *dwelling place*" apply to a dwelling place which is *his*, so far that he has control over it and is master of it; not to a place provided for him.  The dwelling place,

which is to control his settlement, is to be his and not that of another. So in the latter clause of the fourth mode, the equivalent expression *"actually dwell and have his home,"* does not apply to the condition of one who is receiving supplies or support as a pauper directly or indirectly. The last dwelling place of Pressy and wife in Industry, before they became paupers, was in the part annexed to New Sharon, and that town is liable for their support. *New Chester* v. *Bristol,* 3 N. H. 71; *Southbridge* v. *Charlton,* 15 Mass. 249; *Smithfield* v. *Belgrade,* 19 Maine, 387.

The evidence satisfactorily establishes the residence of Mrs. Dyer to have been for five consecutive years upon the territory annexed to the defendant town. Her settlement will be transferred with the territory upon which she dwelt to the town of New Sharon, and they must be adjudged liable for her support.