Raymond E. and Gladys M. ANDERSON

v.

Francis F. NEAL, Esq.

Supreme Judicial Court of Maine.

Argued June 4, 1980.
Reargued Jan. 9, 1981.
Decided April 30, 1981.

Cole & Daughan, Francis Daughan, orally, Sheila Fine, orally, Roland A. Cole, Wells, for plaintiff.

Preti, Flaherty & Beliveau, Jonathan S. Piper, orally, Portland, for defendant.

Before McKUSICK, C. J., WERNICK, GODFREY, NICHOLS, GLASSMAN, ROBERTS and CARTER, JJ., and DUFRESNE, A. R. J.

GLASSMAN, Justice.

In this action for damages for alleged attorney malpractice, the plaintiffs, Raymond and Gladys Anderson, appeal from a summary judgment in favor of the defendant, Francis F. Neal, entered in the Superior Court, York County.

The parties have submitted this appeal on an agreed statement of facts. M.R.Civ.P. 74A(d). The plaintiffs commenced this action on June 1, 1979 by filing the complaint.

The defendant is an attorney who had been hired to do a title examination of a parcel of real estate being purchased by the plaintiffs. In his title opinion letter, dated March 31, 1969, the defendant failed to note the existence of a right-of-way across the property in question. This right had been an encumbrance, in fact, since 1915. The plaintiffs, in reliance on the defendant's title opinion, acquired title to the real estate on March 31, 1969. The plaintiffs did not have actual knowledge of the right-of-way until an unspecified date less than six years prior to the commencement of this action. It was stipulated that the value of the property purchased was diminished by the existence of the right-of-way.

The Superior Court granted the defendant's motion for summary judgment. In a written order it ruled that the plaintiffs' cause of action accrued on March 31, 1969 and was therefore barred by the applicable statute of limitations. 14 M.R.S.A. § 752. We vacate the judgment.

Neal contends that this Court is foreclosed, both by its own decisions and by the Legislature's "adoption" of those decisions, from recognizing a rule that dates accrual of a cause of action for legal malpractice from the date when the malpractice is, or reasonably should have been, discovered. From our reading of our prior cases and of the applicable legislation, we find nothing to impede this Court's freedom to declare when a cause of action accrues in attorney malpractice cases.

■ Although the Legislature has specified that the general statute of limitations in civil actions, 14 M.R.S.A. § 752, shall run for six years "after the cause of action accrues," it has never defined *when* a cause of action accrues under this statute but has left that determination to the Judicial Department. This Court has the power to define the time of accrual. *See Williams v. Ford Motor Co.,* Me., 342 A.2d 712, 714 (1975); *see also Neel v. Magana, Olney, Levy, Cathcart & Gelfand,* 6 Cal.3d 176, 190–91, 98 Cal.Rptr. 837, 846–47, 491 P.2d 421, 430–31 (1971); *Franklin v. Albert,* —— Mass. ——, 411 N.E.2d 458, 462 (1980); *Hendrickson v. Sears,* 365 Mass. 83, 88, 310 N.E.2d 131, 134 (1974); *Peters v. Simmons,* 87 Wash.2d 400, 405, 552 P.2d 1053, 1056 (1976).

■ The legislative recognition of the need for a discovery rule of accrual in certain situations, *see, e. g.,* 14 M.R.S.A. § 752–A, does not preclude this Court from giving judicial recognition to such a need in others. *See Hendrickson v. Sears, supra,* 365 Mass. at 89, 310 N.E.2d at 135. Nor are we precluded from announcing a discovery time of accrual in legal malpractice cases by the so-called doctrine of legislative acquiescence. The Maine Legislature's repeated reenactment of the same statute of limitations *since 1821* does not justify the assumption that the Legislature has adverted to and approved the decisions of this Court regarding accrual of causes of action to the extent necessary to foreclose judicial reconsideration of prior cases. *See Neel v. Magana, Olney, Levy, Cathcart & Gelfand, supra,* 6 Cal.3d at 191, 98 Cal.Rptr. at 847, 491 P.2d at 431.[1]

Even less justifiable is the assumption that the Legislature's simultaneous reduction of the limitations period in medical malpractice actions from six years to two years and retention of the "accrual" date for commencement of the statute's running,

---

1. In 1962 in the case of *Tantish v. Szendey,* 158 Me. 228, 237, 182 A.2d 660, 664 (1962), this Court held that a cause of action for medical malpractice accrued at the time of the negligent act. Quoting from *Betts v. Norris,* 21 Me. 314, 324 (1842), this Court rejected any suggestion that a cause of action for negligence did not accrue until injury was sustained. *Tantish v. Szendey, supra,* 158 Me. at 235, 182 A.2d at 663. In 1964, the Maine statutes were revised, and the language of the statute of limitations applicable to medical malpractice was un-changed. P.L.1963, ch. 402, sec. 170. In 1975, by way of dictum, we interpreted *Tantish* as holding that a cause of action for medical malpractice accrues when the plaintiff sustains injury. *Williams v. Ford Motor Co., supra,* 342 A.2d at 716. How can such reinterpretation of an earlier holding be squared with a strict application of the so-called doctrine of legislative acquiescence? Did the Legislature in 1964 acquiesce in *Tantish* as written or as subsequently interpreted? Of course, the answer is that the Legislature did neither.

P.L.1931, ch. 62, revealed legislative disapproval of the "discovery" rule and a legislative mandate that a cause of action for professional malpractice shall accrue on the date of injury. In a recent case, the Massachusetts Supreme Judicial Court rejected the assumption that the Massachusetts Legislature's failure to enact a proposed discovery rule precluded contrary judicial interpretation of the word "accrues" in that state's statute of limitations governing medical malpractice actions. *See Franklin v. Albert, supra,* 411 N.E.2d at 461, announcing a discovery rule and *overruling Capucci v. Barone,* 266 Mass. 578, 165 N.E. 653 (1929), which defined the time of accrual in medical malpractice cases as the date of the malpractice. Agreeing with the Supreme Court of Oregon that " 'no one knows why the legislature did not pass the proposed measures,' " *Franklin v. Albert, supra,* 411 N.E.2d at 461, *quoting Berry v. Branner,* 245 Or. 307, 311, 421 P.2d 996, 998 (1966), the highest court in Massachusetts concluded that legislative failure to give statutory recognition to a discovery rule may have resulted from the

> "belief that the matter should be left to be handled by the normal processes of judicial development of decisional law, including the overruling of outstanding decisions to the extent that the sound growth of the law requires." *Franklin v. Albert, supra,* 411 N.E.2d at 461–62, *quoting* H. Hart & A. Sacks, *The Legal Process: Basic Problems in the Making and Application of Law* 1395–96 (tent. ed. 1958).

■ We agree with the Massachusetts Supreme Judicial Court that, absent explicit legislative direction, definition of the time of accrual of causes of action for professional malpractice remains a judicial function. *See also Neel v. Magana, Olney, Levy, Cathcart & Gelfand, supra,* 6 Cal.3d at 192, 98 Cal.Rptr. at 847, 491 P.2d at 431. Of course, the Legislature has plenary authority to expressly change any rule we announce.

■ It is true that we have declared, as a general rule, that a cause of action in tort accrues at the time when the plaintiff sustains a judicially cognizable injury. *E. g., Bozzuto v. Ouellette,* Me., 408 A.2d 697, 699 (1979); *Williams v. Ford Motor Co., supra; see Tantish v. Szendey,* 158 Me. 228, 182 A.2d 660 (1962), as interpreted in *Williams v. Ford Motor Co., supra.* Thus, the institutional considerations of uniformity, certainty and finality in the law must figure into any decision to carve an exception from a settled rule. However, the principle of *stare decisis* is and must be broad enough to require departure from otherwise governing precedent when the case before the court cannot be decided rationally and fairly on the basis of settled law. *See* Comment, *Stare Decisis,* 30 Me.L.Rev. 55 (1978); *see also Beaulieu v. Beaulieu,* Me., 265 A.2d 610, 613 (1970); *Franklin v. Albert, supra,* 411 N.E.2d at 462. This Court has fulfilled its role of reasoned decision-making by departing from precedent when principles long adhered to have lost their vitality or lack the capacity to produce just results. *See, e. g., Black v. Solmitz,* Me., 409 A.2d 634 (1979); *Davies v. City of Bath,* Me., 364 A.2d 1269 (1976); *Beaulieu v. Beaulieu, supra.*

The general rule—accrual at the time of judicially cognizable injury—generally works, and we do not abandon it. In most cases, this rule represents a just balance between a plaintiff's legitimate claim and a defendant's need for an eventual end to potential liability. However, the general rule does not adequately adjust the balance of the parties' rights in situations involving the specific complex of interests represented by a legal malpractice claim and should yield to a more just rule.

■ We start our analysis with a recognition of the fundamental proposition that attorney and client necessarily share a fiduciary relationship of the highest confidence. *See, e. g., Neel v. Magana, Olney, Levy, Cathcart & Gelfand, supra,* 6 Cal.3d at 188–89, 98 Cal.Rptr. at 844–45, 491 P.2d at 428–29; *Hendrickson v. Sears, supra,* 365 Mass. at 90, 310 N.E.2d at 135. *See generally* 7 Am.Jur.2d *Attorneys at Law* § 119 (1980). The purchaser of real property who employs

an attorney to search the title must rely absolutely on the attorney's representations regarding the state of the title in deciding whether to purchase the property. In the instant case, the plaintiffs relied on an affirmative, albeit negligently made, misrepresentation by the defendant-attorney.

The parties' agreed statement of facts stipulates that the plaintiffs have sustained damage as a result of an affirmative misstatement by the attorney in the title opinion. Although the amount of the loss is undisclosed, in cases of this type the magnitude of the loss can be catastrophic to the client. To adopt a rule which bars redress of such a loss before the client reasonably should have discovered it is unreasonable and unfair. The exercise of ordinary care could not have led the client to discover the defendant's negligence unless "ordinary care" implies that a prudent person would not rely upon the attorney's title opinion but would hire a second attorney to check the work of the first, "an expensive and impractical duplication, clearly destructive of the confidential relationship between the practitioner and his client." *Neel v. Magana, Olney, Levy, Cathcart & Gelfand, supra,* 6 Cal.3d at 188, 98 Cal.Rptr. at 844, 491 P.2d at 428.

■ The essence of the attorney-client relationship in title cases is the faith and trust which the client places in the representations of the attorney regarding the status of the title to the property he is about to purchase. The security of knowing that the title is good and the property is free of encumbrances is what the client purchases when he retains an attorney to search title for him. *See, e. g., Family*

*Savings and Loan, Inc. v. Ciccarello,* 157 W.Va. 983, 993, 207 S.E.2d 157, 163 (1974). Under such circumstances, fairness, justice and common sense dictate that we join the courts around this country that have recognized that a cause of action for negligent search of a title by an attorney does not accrue until the plaintiff discovers, or reasonably should have discovered, the injury.[2]

Indeed, the Legislature has established a policy that encourages the judiciary to date accrual from the time of discovery in cases of professional malpractice. In Title 14, Section 859 of the Maine Revised Statutes, the Legislature mandated that a fraudulently concealed cause of action does not accrue until discovery of the cause of action. Section 859 represents legislative recognition of the fact that dating accrual of an undiscoverable cause of action from the time of injury works an injustice on injured plaintiffs.

Although there is neither an allegation nor a suggestion of fraudulent concealment in the instant case, the nature of the fiduciary relationship between attorney and client, the reliance placed upon the attorney by the client and the lack of means for discovery place the client in a situation akin to that of one who has had a cause of action fraudulently concealed from him. *See Neel v. Magana, Olney, Levy, Cathcart & Gelfand, supra,* 6 Cal.3d at 188–89, 98 Cal.Rptr. at 844–45, 491 P.2d at 428–29. In order to align the common law of this state with the well-considered legislative policy of Section 859, we hold that a cause of action based on an allegedly negligent title search accrues at the time the plaintiff discovers, or reasonably should have discovered, his injury.[3]

---

**2.** *See, e. g., Pioneer Nat'l Title Ins. Co. v. Sabo,* 432 F.Supp. 76 (D.Del.1977); *Child, Inc. v. Rodgers,* 377 A.2d 374 (Del.Super.1977), aff'd in part and rev'd in part on other grounds, 401 A.2d 68 (Del.1979); *Mumford v. Staton, Whaley & Price,* 254 Md. 697, 255 A.2d 359 (1969); *Hendrickson v. Sears, supra; Family Sav. & Loan, Inc. v. Ciccarello, supra.* For cases applying the "discovery rule" to other types of attorney malpractice, *see, e. g., Yazzie v. Olney, Levy, Kaplan & Tenner,* 593 F.2d 100 (9th Cir. 1979) (applying Arizona law); *Woodruff v. Tomlin,* 511 F.2d 1019 (6th Cir. 1975) (applying

Tennessee law); *Neel v. Magana, Olney, Levy, Cathcart & Gelfand, supra; Edwards v. Ford,* 279 So.2d 851 (Fla.1973); *Kohler v. Woollen, Brown & Hawkins,* 15 Ill.App.3d 455, 304 N.E.2d 677 (1973); *Cameron v. Montgomery,* 225 N.W.2d 154 (Iowa 1975); *Sorensen v. Pavlikowski,* 94 Nev. 440, 581 P.2d 851 (1978); *McKee v. Riordan,* 116 N.H. 729, 366 A.2d 472 (1976); *Mills v. Killian,* 273 S.C. 66, 254 S.E.2d 556 (1979); *Peters v. Simmons, supra.* See Annot., 18 A.L.R.3d 978 (1968 and Supp.1980).

**3.** Years ago Dean Pound and Chief Justice Stone recognized the propriety of courts rea-

The principles we here apply may require a reexamination of *Tantish v. Szendey, supra,* in the medical malpractice area when the issue is properly before us. *See Franklin v. Albert, supra*; Annot., 80 A.L.R.2d 368, § 7(b) (1961), and Later Case Service 167 (1979).

The entry is:

Judgment vacated.

Remanded to the Superior Court for further proceedings consistent with the opinion herein.

WERNICK, GODFREY, ROBERTS and CARTER, JJ., concurring.

Dissenting opinion by DUFRESNE, A. R. J., in which McKUSICK, C. J., and NICHOLS, J., join.

DUFRESNE, Active Retired Justice, dissenting, joined by McKUSICK, C. J., and NICHOLS, J.

With due respect to the views of the majority, I firmly believe that the adoption by this Court at this time of the "discovery rule" in legal malpractice cases is tantamount to judicial legislation, and, therefore, I must dissent.

When does the statute of limitations begin to run for an injury suffered as a result of legal malpractice? I conclude that in the instant case it started to run from the time the defendant rendered an erroneous opinion certifying the title to real estate which the plaintiffs were purchasing, and not from the time they discovered the defendant's negligent work in his search of the title. This was also the trial court's conclusion on the basis of which summary judgment was granted in favor of the defendant. Thus, there was no error and I would affirm the Superior Court judgment.

The undisputed facts to be gleaned from this record may be summarily stated. The defendant Neal, a practicing attorney, was hired to do a title examination of real estate which the plaintiffs, the Andersons, were in the process of purchasing. In his letter certificate of title dated March 31, 1969, Neal failed to note and disclose a pre-existing right of way across the reference land, which the Andersons did buy on that date in reliance on the defendant's stated written opinion furnished them at the time. The right of way had been an encumbrance *in fact* since 1915, but the Andersons did not have actual knowledge of the existence of the right of way prior to April 1, 1976 or thereabouts.[1] The agreed statement further conceded that the existence of the easement did depress the value of the property at the time of purchase.

The critical issue in this appeal is whether, within the meaning of 14 M.R.S.A., § 752, the Andersons' cause of action against the defendant attorney "accrued" at the time he rendered the erroneous certificate of title on March 31, 1969 or on the Andersons' discovery of the existence of the encumbrance in April 1976. If the 1969 date is controlling, then the instant action is barred by the applicable statutory limitations, since it was commenced more than six years after the cause of action is deemed to have accrued. On the other hand, if the date of discovery in 1976 were determined to be the time of accrual of the plaintiffs' cause of action, then the present action would be timely and viable.

Since the Legislature never enacted a *specific* limitations statute respecting actions for damages on account of legal malpractice as it did in the case of medical malpractice, causes of action based on the wrongful conduct of attorneys, whether in contract or tort, must be commenced, as mandated by 14 M.R.S.A., § 752, within 6 years after the cause of action accrues and not afterwards, since this general provision requires that "all civil actions," except as otherwise provided, be so commenced.

soning by analogy from statutes. *See* Pound, *Common Law and Legislation,* 21 Harv.L.Rev. 383, 385–86 (1908); Stone, *The Common Law in the United States,* 50 Harv.L.Rev. 4, 12–15 (1937). The same point was made more recently by Chief Justice Traynor. *See* Traynor, *Statutes Revolving in Common-Law Orbits,* 17 Cath.U. of A.L.Rev. 401, 402–05 (1968).

1. This encumbrance was the subject of litigation which was finally resolved in this Court in *Stevens v. Anderson,* Me., 393 A.2d 158 (1978).

A cause of action "accrues" as soon as the party in whose favor it arises is entitled to maintain an action thereon and not at the time of discovery of the right of action. This is the construction put upon the stated statute by this Court and by the Legislature. Our recent decisions in *Williams v. Ford Motor Co.*, Me., 342 A.2d 712 (1975) and *Bozzuto v. Ouellette*, Me., 408 A.2d 697 (1979) so confirm:

> "[A]ccrual of a tort cause of action as used [in the statutes of limitation] means exactly what the legal term implies—the point at which a wrongful act produces an injury for which a potential plaintiff is entitled to seek judicial vindication." *Bozzuto, supra,* at 699.

This Court specifically rejected the discovery rule, so-called, very early after statehood. In *Bishop v. Little*, 3 Me. 405 (1825), more than 6 years after the purchase of property, the plaintiff sought to recover the money paid for land to which neither the defendant nor his grantors had title. It was urged in that case by the plaintiff's counsel that, as the want of title was not discovered till within six years of the commencement of the action, the statute of limitations was no bar and that the statute did not commence running until the discovery was made. Recognizing the hardship which the statute created for the plaintiff, Chief Justice Mellen, nevertheless, ruled that such is not the law and that the statute must be administered "without any reference to the question of hardship."

The discovery rule was again repudiated in *Betts v. Norris*, 21 Me. 314, 38 Am.Dec. 264 (1842), where this Court held that the cause of action against a sheriff for failure to attach sufficient property to satisfy the eventual judgment accrued at the time the sheriff's nonfeasance took place and not when later events brought the injurious consequences of the initial wrong to light. In *Bozzuto v. Ouellette, supra,* this Court stated in following the *Betts* rule that the plaintiff's ignorance of the defendant's misfeasance for about seven years did nothing by itself to prevent the running of the statute of limitations, whether it be the special four-year statute applicable to actions against sheriffs or the six-year statute governing limitations in *all civil actions* (i. e. 14 M.R.S.A., § 752). Thus, the discovery rule was again disapproved by this Court as late as 1979.

The plaintiffs argue that this Court should carve an exception to the traditional rule followed in *Bishop, Betts* and *Bozzuto* and adopt the discovery rule in legal malpractice cases on similar grounds as were advanced in *Hendrickson v. Sears*, 365 Mass. 83, 310 N.E.2d 131 (1974), in which the issue was: when does a client's cause of action against an attorney for negligent certification of title to real estate accrue for purposes of the statute of limitations? *See also Neel v. Magana, Olney, Levy, Cathcart & Gelfand*, 6 Cal.3d 176, 98 Cal.Rptr. 837, 491 P.2d 421 (1971); *McKee v. Riordan*, 116 N.H. 729, 366 A.2d 472 (1976).

The reasons given in *Hendrickson, supra,* for the adoption of the discovery rule in legal malpractice were: 1) the exact case was stated to be of first impression, though the traditional rule had been consistently followed in medical malpractice cases; 2) there existed a growing body of case law which have opted for the discovery rule in legal malpractice; 3) the legislature in general left the definition of accrual of causes of action to judicial rationalization and interpretation; 4) statutory enactments, such as in the case of fraudulent concealment, where the discovery rule is expressly made applicable, do not negate its applicability in other circumstances to which the legislature has not spoken; 5) the lawyer-client relationship is highly fiduciary in its nature, involving, on the part of the lawyer, a duty of ·full and fair disclosure of facts material to the client's interests, while the client, to the knowledge of the attorney, usually places the greatest reliance on the expertise of his selected professional person; also, the relationship is such that the client is not expected to recognize professional negligence if he sees it, nor is he expected to watch over the professional, nor should the protection of his rights require the retention of a second professional to check on the first.

Discussing these reasons in inverse order of their listing, I note initially that this Court in the most intimate relationship of doctor and patient refused to apply the discovery rule and affirmed the judgment barring the patient's action, because it was commenced beyond the statutory period of limitations. In *Tantish v. Szendey*, 158 Me. 228, 182 A.2d 660 (1962), the plaintiff sued her doctor by action commenced on July 20, 1960 for negligently failing to remove a tubing inserted by him in her back in the course of an operation on September 5, 1956. The presence in her body of the foreign substance was not discovered until July 21, 1958. Thus, the action was brought within two years of the time of discovery, but beyond the two-year statutory limitation period, if the time of accrual of the cause of action is the date on which the medical malpractice took place. We presume that the same reasons were presented to this Court in the stated medical malpractice case as were given in *Hendrickson* in support of the discovery rule in that case of legal malpractice. In *Tantish, supra*, 182 A.2d at 663, and in *Betts, supra*, 21 Me. at 324, 38 Am.Dec. 264, when commenting with approval on *Wilcox v. Plummer's Executors*, 4 Peters 172, 29 U.S. 172, 7 L.Ed. 821 (1830), a case involving legal malpractice, this Court had this to say:

" 'From a careful examination of that case [*Wilcox, supra*] it will seem to be difficult to infer, that the statute of limitations, in any case of nonfeasance or misfeasance, unaccompanied by fraudulent concealment, should be considered as beginning to run from any time, other than that at which the act of nonfeasance or malfeasance actually took place. The substantive cause of action then takes place; and whatever may follow, or flow from it, is but incident thereto, and must follow the fate of the primary cause.' "

Also cited with approval in *Betts* was the case of *Howell v. Young*, 5 B. & C. 259, which involved misfeasance or nonfeasance of an attorney. This Court viewed the holding in *Howell v. Young* to be that

"the damage, subsequently arising, did not constitute a substantive cause of ac-

tion, of itself; and that the statute of limitations began to run from the time that the cause producing the injury took place."

Furthermore, the same considerations of the victim's inability to recognize or discover professional negligence exist in the legal as well as in the medical malpractice case. The *Tantish* Court ruled that the possibility of hardship, including its factuality, does not outweigh the need of certainty in establishing the time of accrual of actions, and that any change in the traditional rule must come from the Legislature.

Legislative power is plenary except as it may have been circumscribed expressly or inferentially by the Constitution of the state or nation. Under section 1, part third, of article IV of our State Constitution, the Legislature is vested with full power to make and establish all reasonable laws and regulations for the benefit of the people of the State. See *Ace Tire Co., Inc. v. Municipal Officers of City of Waterville*, Me., 302 A.2d 90, 96 (1973); Article IV, Part Third, § 1, Constitution of Maine.

Although statutes of limitation of actions deal with the citizens' access to the courts of the realm and thus have considerable impact on the third branch of government, the judiciary, nonetheless, the Legislature has the inherent power to legislate in that area and establish statutes of limitation, provided, as the Constitution mandates, such laws and regulations are reasonable. *Garrett v. Raytheon Co., Inc.*, Ala., 368 So.2d 516 (1979). Our Legislature has over the years exercised that power and from early statehood days, it did fix different periods of limitation for different types of cases. See Laws of the State of Maine, 1821, chapter LXII. Although, in connection with any of the numerous actions for which the Legislature was establishing periods of limitation, the 1821 laws did not formulate such limitations in terms of the present terminology to the effect that the action be commenced within x-number of years next after the cause of action accrues, and not afterwards, but rather used the

indefinite expression—within x-number of years next after the cause of such actions or suits, and not after—, nevertheless, the intent was clear that the period of limitation was to run from the time when the action accrued.[2] The 1840 revision made it crystal clear by repeating the present formulation with each period of limitation, except where otherwise provided. In the 1840 revision, the Legislature enacted in substantially identical language the present section 859, of title 14, relating to fraud or fraudulent concealment of one's cause of action.[3] See R.S. 1840, c. 146, s. 18. Married women's actions for alienation of affections, first enacted in 1913 (P.L. 1913, c. 33), but now prohibited (P.L. 1973, c. 298), were specifically barred three years "after the discovery of such offense." Thus, the Legislature was ever aware of the fact that with some causes of actions the time of accrual should be tied to the discovery of their existence as a matter of proper legislative policy.

As indicated in *Williams v. Ford Motor Co., supra,* the Legislature in enacting all statutes of limitation made what it considered a reasonable accommodation between two worthy but competing interests, *i. e.,* that of the plaintiff to have a reasonable time in which to vindicate his claim and that of the defendant to be protected from stale claims, and that this Court's interpretation of the concept of *the accrual of a cause of action* for more than a century and a half must be read therein by legislative adoption.

When the Legislature, in establishing limitations upon causes of action, wished to depart from the traditional starting point of accrual thereof as construed by the courts, it expressly postponed the running of the period of limitation to the time of discovery, as in cases of fraud, fraudulent concealment and alienation of affections previously stated. Such explains the *Tantish* holding in construing the 1931 statute (P.L.1931, c. 62), where for the first time the Legislature addressed specifically the question of limiting the bringing of actions for "malpractice of physicians and all others engaged in the healing art," and retained as the starting point for bringing such actions the time of their "accrual" as previously provided generally for all actions except those expressly given different treatment. True, the focus of that legislation was directed at reducing the period of limitation from 6 years to 2 years, but it must be presumed that the Legislature did consider the discovery rule in connection therewith, but opted against it. *See also, Paradis v. Webber Hospital,* Me., 409 A.2d 672, 676 (1979).

Again, in workers' compensation cases, the Legislature allows the filing of petitions for compensation after the limitation period, if the employee failed to file timely "because of mistake of fact as to the cause and nature of the injury." Likewise, even though passed in 1975, the enactment of section 752–A of title 14 to the effect that civil actions for "design professional" malpractice are outlawed unless commenced within 4 years after such malpractice or negligence is discovered, and in no event after 10 years following the substantial completion of the services, demonstrates an awareness on the part of our Legislators of situations in which as a matter of public policy the traditional rule of "accrual" of causes of action should give way to the discovery rule. They have not as yet decided to compel its application either in medical or legal malpractice.

---

2. Laws of Maine, 1821, c. LXII, s. 8.

Be it further enacted, that any action of the case . . ., which shall be actually declared upon in a proper writ, returnable according to law, purchased therefor, within the term of six years next *after the cause of such action accrued*; shall be deemed and taken to be duly commenced and sued within the meaning of this Act.

3. R.S. 1840, c. 146, s. 18.

If a person, liable to any action mentioned, fraudulently conceals the cause thereof from the person entitled thereto, or if a fraud is committed which entitles any person to an action, the action may be commenced at any time within 6 years after the person entitled thereto *discovers* that he has just cause of action.

The Legislature's more-than-a-century old selective policy application of the discovery rule to only a few chosen causes of action, such as in cases of fraud, fraudulent concealment of the cause of action, alienation of affections and negligence of design professionals, coupled with the consistent use of the traditional rule by the judiciary throughout the years, even in cases of medical malpractice, completely negates the idea that, in anchoring the periods of limitation of actions to the time when the several causes of action accrued, the Legislature merely left it to "judicial rationalization and interpretation" on a case by case basis.

To the contrary, as a general rule of statutory construction, absent a clear purpose to intend otherwise, the Legislature is presumed to have in mind the decisions of this Court and, when using legislative language which has been given a specific meaning by judicial construction, it must be deemed to have adopted the judicially declared interpretation. Statutory words which have acquired a meaning through judicial definition are to be construed in accordance therewith. *See Acheson v. Johnson*, 147 Me. 275, 86 A.2d 628 (1952). The Legislature must be considered as having entertained a consistent design and policy when it started the running of the several statutes of limitation from the time the respective causes of action accrued. *See State v. Beck*, 156 Me. 403, 407, 165 A.2d 433, 435 (1960), appeal dismissed 367 U.S. 903, 81 S.Ct. 1919, 6 L.Ed.2d 1249.

After repeated construction of the general statute of limitations, 14 M.R.S.A., § 752, dating back to *Bishop v. Little*, 3 Me. 405 (1825), the re-enactment of the law in substantially identical language of "accrual of the cause of action" in ten revisions of the statutes throughout the years must be regarded as legislative affirmance of the statute as previously construed by the judiciary. *Myrick v. Hasey*, 27 Me. 9, 17 (1847); *Osgood v. Holyoke*, 48 Me. 410, 414 (1861); *Cota v. Ross*, 66 Me. 161, 165 (1877); *Tuxbury's Appeal*, 67 Me. 267 (1877); *East Livermore v. Livermore Falls Trust & Banking Co.*, 103 Me. 418, 429, 69 A. 306, 15 L.R.A., N.S., 952 (1907); *Sacknoff v. Sacknoff*, 131 Me. 280, 161 A. 669 (1932). We note that the 1964 revision followed our *Tantish* decision by some two years.

As stated in *Starks v. New Sharon*, 39 Me. 368 (1854), judicial construction of statutes adopted by the Legislature in revisions of statutes

"rests ... no longer upon an opinion of the judicial department. It has a legislative sanction; and judicial tribunals are deprived of any legitimate right to change the law by a new and different construction. This would be to declare, what the law should be, not what it is."

Legislative inaction in addressing specifically the question of the accrual of the cause of action in legal malpractice as it did in design professional malpractice may be deemed a slender reed upon which to lean in determining legislative intent (*see Berry v. Branner*, 245 Or. 307, 311, 421 P.2d 996, 998 (1966)), nevertheless, considering the total history of our legislation respecting statutes of limitation, together with the repeated rejection by this Court of the discovery rule, we must say that the displacement of the traditional rule through the adoption of the discovery rule must be made by the Legislature and not by the judiciary. We are not dealing merely with a common law rule fashioned entirely and solely by the judiciary. The traditional rule has been solidly imbedded in legislation and should be changed, if so desired, by the body in whom the power of legislation is vested. *See Fredette v. State of Maine*, Me., 428 A.2d 395 at 401, 1981—statutory incorporation of judicially interpreted concept. *See also Williams v. Ford Motor Co., supra*, at 718; *Tantish v. Szendey*, 158 Me. 228, 237, 182 A.2d 660, 664 (1962); *Starks v. New Sharon, supra*, at 370.

Since the parties in their agreed statement of the record disclose the existence of no fact from which a fact finder might conclude that the defendant had been guilty of fraudulent concealment of the plaintiffs' cause of action, which would call for the application of the discovery rule, the Superior Court was required by law to grant

summary judgment for the defendant. *See Millett v. Dumais*, Me., 365 A.2d 1038, 1042 (1976); *Bozzuto v. Ouellette, supra,* at 699.

I would deny the appeal and affirm the judgment of the Superior Court in favor of the defendant.