**Kay PINKHAM, Plaintiff, Appellee,**

v.

**John A. BURGESS,**
**Defendant, Appellant.**

**Kay I. PINKHAM, Plaintiff, Appellant,**

v.

**John A. BURGESS,**
**Defendant, Appellee.**

**Nos. 90–1254, 90–1313.**

United States Court of Appeals,
First Circuit.

Heard March 6, 1991.

Decided May 22, 1991.

Lon A. Berk with whom Bert J. Capone and Peabody & Arnold were on brief, Boston, Me., for John A. Burgess.

Steven R. Smith, Portland, Me., for Kay Pinkham.

Before CAMPBELL, Circuit Judge, COFFIN and BOWNES, Senior Circuit Judges.

COFFIN, Senior Circuit Judge.

Both parties appeal from a judgment on a jury verdict awarding plaintiff Kay Pinkham damages on her claim of negligent representation by defendant attorney John Burgess. We affirm.

## I. *Background*

In early 1980, Kay Pinkham was arrested for forging a stock certificate with the name of Maurice Rodrigue, a principal stockholder in the corporation that Pinkham and several others had jointly established. The complaining party was a fellow stockholder, Frank Johansen, who, together with Rodrigue, had been involved in a stockholder dispute with Pinkham. Pinkham was tried and convicted by a jury on the charge in August 1980. One year later, the Maine Law Court overturned her conviction, ruling that the evidence was insufficient.

Within two weeks of her arrest, Pinkham contacted attorney Burgess. Burgess agreed to represent her in a civil action against the private and public parties, alleging that her arrest, prosecution and conviction violated her civil rights. No action was filed until after the termination of the criminal proceedings.

In the course of his representation of Pinkham, Burgess committed what expert testimony represented to be gross negligence. He repeatedly delayed filing and prosecuting the action. He proceeded against the district attorneys who undoubtedly were protected by absolute immunity. He failed to appear at the last minute to argue an appeal from partial summary judgment. He failed to pursue a variety of state law claims. He conducted no discovery over a period of years, despite having received two extensions. He did not appear for the deposition of a key witness who had been subpoenaed from out of state. He neglected to attend plaintiff's deposition. Finally, he failed to respond to a motion for summary judgment, resulting in the dismissal of the action.

Pinkham brought suit in the district court alleging that Burgess had represented her negligently. She pursued two alternative theories. First, she claimed that he had negligently advised her about the nature and risks of the underlying lawsuit, and that, had she been adequately advised, she never would have instituted the action. Second, she argued that Burgess had negligently caused her to lose the underlying suit, and she sought damages for the value of that suit. She also sought damages for emotional distress caused by Burgess' negligent or reckless conduct.

The jury found that Burgess was not negligent in advising Pinkham about the nature and risks of undertaking the lawsuit. It found that Burgess was negligent in the handling of the suit after it was instituted, but that his negligence did not cause plaintiff to lose the value of the underlying case. The jury found, however, that Burgess negligently or recklessly had caused Pinkham severe emotional distress. It placed a total value of $218,600 on Pinkham's damages, which it reduced to $186,-500 on the basis of her comparative negligence.

On appeal, Burgess principally challenges the award of emotional distress damages, asserting both legal and factual inadequacy. He suggests that the jury improperly was permitted to find emotional distress damages where it found that Pinkham would not have prevailed in the underlying case. He also argues that plaintiff failed to present sufficient evidence of severe emotional distress to support a verdict.

Burgess further complains that he was deprived of his only defense to Pinkham's claim of reckless or intentional infliction of emotional distress when the court refused to allow expert testimony concerning his psychological condition. Finally, Burgess argues that the court abused its discretion by refusing to grant a mistrial after plaintiff referred to liability insurance during her direct testimony.

Pinkham cross appeals the reduction in her damage award for comparative negligence. She suggests that a comparative negligence claim in a professional relationship may not as a matter of public policy be based on a claim that the plaintiff should have fired the attorney earlier.[1]

We shall address these arguments in turn.

## II. Emotional Distress Damages

█ Defendant argues that the district court erred in allowing the jury to find emotional distress damages for two reasons. First, he suggests that such damages are not available under Maine law in an attorney malpractice action without a finding that the plaintiff would have prevailed in the underlying lawsuit. He argues that such damages are neither proximately caused by the malpractice nor reasonably foreseeable as a matter of law.

Defendant, however, has failed to preserve this issue for appeal. The court instructed the jury that it could not award damages for the value of plaintiff's civil rights claim in the absence of finding that she would have prevailed on that claim. It instructed, however, that the jury could award damages for emotional distress that were foreseeable and proximately caused by defendant's negligent or reckless conduct, regardless of the viability of the underlying action. The defendant entered no objection to this instruction.[2] As we repeatedly have held, in the absence of a specific objection after the jury instructions are given, this court will not review the asserted error. *See* Fed.R.Civ.P. 51; *Kelley v. Schlumberger Technology Corp.*, 849 F.2d 41, 43–44 (1st Cir.1988).

Defendant argues, however, that the real issue here is whether his motion for directed verdict on the sufficiency of plaintiff's case was improperly denied. But to the extent Burgess is claiming that the jury did not properly reach emotional distress damages in the absence of a finding that the underlying lawsuit was meritorious, he merely is lodging an objection to the judge's contrary instructions, not challenging the sufficiency of the evidence. His appeal on this point therefore is not properly preserved.[3]

---

1. In her brief, Pinkham also raised several alleged errors in the jury instructions on the underlying action. At oral argument, however, she made it clear that those issues were raised solely for the purpose of protecting her interests in the event this court saw fit to remand the case for retrial on one of defendant's claims of error. In light of our disposition, we do not discuss those issues.

2. In fact, we note that defense counsel actually agreed with the court's instruction at one point:

 THE COURT: I'm going to submit the claim for negligently inflicted severe emotional distress to the jury under the *Gammon [v. Osteopathic Hospital of Maine, Inc.*, 534 A.2d 1282

(Me.1987)] standard of the Maine substantive law.

. . . . .

 MR. PIPER: I have no problem with your Honor doing that in this case. I would have had a problem with the older state law, the case within a case.
 Transcript Vol. VII at 1097.

3. Moreover, in his motions for directed verdict defendant never argued that emotional distress damages were not available in Maine ·in the absence of a finding that the underlying claim would have been successful. He addressed only the *retroactivity* of the rule in *Gammon,* 534 A.2d 1282 (allowing recovery for the tort of negligent infliction of emotional distress when psychic injury is the sole damage), not whether

■ Burgess also challenges the sufficiency of plaintiff's evidence of severe emotional distress. He suggests that the evidence did not, as a matter of law, show such severe harm as to support a finding of negligent or reckless infliction of emotional distress. Although Burgess recognizes that he is not entitled to an outright reversal of the judgment based on insufficient evidence because he failed to move for judgment n.o.v., *see Johnson v. New York, New Haven & Hartford R.R.*, 344 U.S. 48, 73 S.Ct. 125, 97 L.Ed. 77 (1952), he argues that his motion for directed verdict preserved his right to ask on appeal for a new trial on this issue.

Defendant misconstrues the law. Our case law unequivocally holds that this court will not review the sufficiency of the evidence in the absence of a motion for judgment notwithstanding the verdict. *See Wells Real Estate, Inc. v. Greater Lowell Bd. of Realtors*, 850 F.2d 803, 810 (1st Cir.1988). While failure to move for judgment n.o.v. does not preclude a party from seeking a new trial, the authority to grant a new trial is confided almost entirely to the discretion of the district court. *Id.* at 811. A motion for new trial therefore must be made in the first instance to the district court, "particularly where the weight of the evidence is at issue." *Id.* Burgess moved for *neither* judgment n.o.v. nor new trial, and therefore has failed to preserve this issue for appeal.

■ Even were the error preserved, however, our review discloses adequate evidence to support the jury's finding of severe emotional distress. There was evidence that Pinkham was severely depressed and taking a strong antidepressant medication, that Burgess' conduct caused her years of anxiety and humiliation, that he caused tremendous friction in her marriage leading to her divorce, and that the protracted suit and fees in part caused the loss of her home. This evidence, taken together, was sufficient for a jury to find severe emotional distress.

### III. *Exclusion of Expert Testimony*

■ Burgess argues that the district court erred when it excluded expert testimony about his inability to recognize the emotional distress he was causing or to form an intent to cause it. He argues that this evidence was critical to rebut plaintiff's claim of reckless or intentional infliction of emotional distress. He admitted below and to this court that the evidence is not a defense to the negligent infliction of such emotional distress, an alternate theory raised by plaintiff.[4]

The district court concluded that the evidence was relevant in assessing the seriousness of defendant's conduct.[5] The court allowed defendant's witness, a psychologist, to begin to testify. After hearing a portion of the testimony, the court dismissed the jury and continued to hear the evidence as an offer of proof.

The witness, Dr. Wicks, testified that he had examined Burgess in August 1987, subjecting him to a series of psychological tests. From those tests, he concluded that the defendant had organic brain syndrome. Because he was not a medical doctor, Wicks was not qualified to diagnose the cause of the syndrome, although he testified that it could have had a number of origins, including a series of small strokes, a blow to the head or several diseases. He testified, however, that in light of the psychological profile, the syndrome was chronic rather than acute, that is, it was not the result of recent trauma. Wicks offered the opinion that Burgess was suffering from the problem as early as 1982–83, basing that opinion on the defendant's unsubstantiated report of a need in 1980 to take two

the law presently allows such recovery. *See* Tr. at 787–94. His argument below challenged whether such damages would have been available before 1985 in the *underlying* lawsuit. Appellant's argument on appeal therefore is quite different, and, even were we inclined to overlook the failure to object, we would have to conclude that the issue was not preserved.

**4.** The jury's verdict did not specify whether it found reckless or merely negligent infliction of emotional distress.

**5.** We assume without deciding that this ruling accurately reflects Maine law.

weeks off from a three-and-one-half month trial due to exhaustion and inability to concentrate, a history consistent with a mild stroke. He was unable, however, to give that opinion with a reasonable degree of medical certainty, not having examined Burgess until 1987 and being unable to confirm the physical cause of Burgess' condition. Dr. Wicks then testified that this kind of problem could prevent a sufferer from recognizing the effects of his behavior on others.

After hearing the tentative nature of the expert's opinion, the district court concluded that it was of minimal probative value. Because the evidence had substantial potential to confuse or mislead because the jury might improperly consider Burgess' unsubstantiated problem as an excuse for his negligence, the district court decided to exclude the testimony. Burgess argues that this decision was reversible error in that it deprived him of his only defense to plaintiff's claim of reckless or intentional infliction of emotional distress.

As a general matter, the district court has broad discretion in deciding whether the probative value of evidence "is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury...." *See* Fed.R.Evid. 403; *Freeman v. Package Machinery Co.*, 865 F.2d 1331, 1340 (1st Cir.1988). "Only rarely—and in extraordinarily compelling circumstances—will we, from the vista of a cold appellate record, reverse a district court's on-the-spot judgment concerning the relative weighing of probative value and unfair effect." *Freeman*, 865 F.2d at 1340.

We do not think this decision presents such an extraordinary circumstance. The defendant's expert was able to offer only a doubly qualified opinion: that the defendant's *possible* mental condition years before he was examined, if it existed, *could* have affected his ability to perceive the harm that he was causing a client. In deciding whether to admit evidence under Rule 403, the district court must consider the relative weakness of the testimony to determine whether its probative value is substantially outweighed by prejudice or confusion. Such a weighing of evidence, contrary to the defendant's suggestion, does not amount to improperly substituting the court's judgment for that of the jury. Instead, it represents the exercise of a duty imposed upon the district court by the rules of evidence. *See* 10 *Moore's Federal Practice* § 403.12 at IV–82 (1988) ("[W]hen evidence with great potential to confuse is of questionable relevance, limited probative value, or both, courts will usually exclude it.") And this evidence indisputably was susceptible of being improperly considered by the jury on the issue of Burgess' negligence. We think the district court was within its discretion in deciding that the danger that the jury would be misled here substantially outweighed the probative value of defendant's evidence.

### IV. *Refusal to Grant a Mistrial*

In the course of Pinkham's direct testimony about the extent of defendant's involvement in her affairs, she referred to "liability insurance." [6] On the basis of this reference, the defendant moved for a mistrial because the jury was improperly invited to think of the availability of a deep-pocket insurer footing the bill for any damages assessed. The district court denied the motion, concluding that the evidence was not introduced in violation of Fed.R. Evid. 411,[7] was relevant to the plaintiff's

---

**6.** Plaintiff testified as follows:

Beginning in December, 1980, John Burgess became very, very interested in my husband's [Robert Murch's] business activities. He was—had been with Jim Longley for 10 years, was a financial planner, and worked in insurance, and a whole area of high-powered insurance, and was very interested in Robert Murch investigating the possibility of providing liability insurance for trial attorneys. They wanted to self-insure; their own insur-

ance. And he asked Robert to investigate that. And he became more and more involved in my husband's business activities through all of that time.

Appendix at 96–97.

**7.** Fed.R.Evid. 411 provides:

Evidence that a person was or was not insured against liability is not admissible upon the issue whether the person acted negligently or otherwise wrongfully. This rule

case and was unlikely to have been perceived by the jury as an indication that there was insurance coverage involved in this case. The court offered to consider a limiting instruction if defendant wished to offer one.

Despite the defendant's characterization of the reference as "highly prejudicial," we find that the district court committed no error in refusing to grant the mistrial. The testimony at issue does not fall within the proscriptions of Rule 411. In the first place, the plaintiff's statement did not suggest that Burgess was insured; the testimony reflects only that he explored self-insurance with plaintiff's husband. In addition, the testimony referred to "liability insurance" generally, and the plaintiff later made clear that all kinds of liability insurance were involved—property insurance, personal injury insurance, etc.—not simply liability insurance for *malpractice*, the only kind of insurance that could, even implicitly, go to defendant's negligent or wrongful actions. Finally, Rule 411 itself contemplates that evidence that the defendant was insured may be admissible on issues other than negligence. Here, plaintiff introduced evidence of the defendant's insurance discussions with her husband to show the extent to which he became involved in her husband's business dealings. This evidence was relevant to her damage claim that Burgess was a source of conflict in her marriage, leading to its ultimate dissolution. It also was relevant to defendant's defense that she should have fired Burgess earlier: the more involved he was with her husband, the more difficult it became for Pinkham to fire Burgess.

■ In determining whether to admit or exclude evidence about insurance that is offered for a purpose other than to prove a party acted negligently, the district court must apply the principles of Fed.R.Evid. 403 to determine whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice. *See* 10 J. Moore & H. Bendix, *Moore's*

*Federal Practice* § 411.04 (2d ed. 1988 & Supp. 1990–91) (citing cases). The district court, after hearing arguments from both sides and taking some time to deliberate, explicitly concluded that the evidence was probative and that, given the content of the statement, the danger of unfair prejudice was very small because the jury was unlikely to make any inference about whether Burgess was insured.

We see no error in the court's carefully considered decision. We therefore conclude that the evidence was properly admitted and that the district court did not abuse its discretion in refusing to grant a mistrial.

## V. *Comparative Negligence*

■ On cross appeal, Pinkham argues that the jury improperly was instructed to consider her comparative negligence and to reduce damages accordingly. She argues that the defendant's only suggested basis for a finding of comparative negligence was that she should have fired Burgess sooner. Plaintiff suggests that in cases in which a professional such as an attorney is giving advice, the professional must be held to a higher standard than the ordinary tortfeasor. She argues that it would be destructive to the confidential relationship to require a client to second-guess the professional on the very matter for which the professional was hired. She therefore claims that as a matter of public policy the claim that she should have fired Burgess sooner should not support a finding of comparative negligence.

Maine has not decided this particular issue, but our study of Maine law persuades us that its courts would reject plaintiff's claim. We begin our analysis by noting that, ordinarily under Maine law, a party cannot rely blindly on the presumption of the discharge of another's duty, but must at all times exercise reasonable care for his own safety. *Isaacson v. Husson College,* 297 A.2d 98, 103 (Me.1972). The determination of whether a plaintiff has exercised

does not require the exclusion of evidence of insurance against liability when offered for another purpose, such as proof of agency, ownership, or control, or bias or prejudice of a witness.

reasonable care generally is one for the jury, which must apply its ordinary human experience to the facts revealed by the evidence. *Jackson v. Frederick's Motor Inn,* 418 A.2d 168, 174 (Me.1980).

Maine's comparative negligence statute specifically provides:

> Where any person suffers ... damage as a result partially of his own fault and partly of the fault of any other person or persons, ... the damages recoverable in respect thereof shall be reduced to such extent as the jury thinks just and equitable having regard to the claimant's share in the responsibility for the damage.
>
> . . . . .
>
> Fault means negligence, breach of statutory duty or other act or omission which gives rise to a liability in tort or would, apart from this section, give rise to the defense of contributory negligence.

Me.Rev.Stat.Ann. tit. 14, § 156. This language suggests no exceptions to the applicability of the doctrine for certain kinds of torts. *See Austin v. Raybestos–Manhattan, Inc.,* 471 A.2d 280, 284 (Me.1984) (legislature intended to make all tort actions subject to defense under this section). And we find no Maine cases indicating that this type of comparative negligence does not fall within the statute.

In another context, however, Maine has suggested that a client is not obligated to question every decision of her attorney. In *Anderson v. Neal,* 428 A.2d 1189 (Me. 1981), the court said:

> The exercise of ordinary care could not have led the client to discover the defendant's negligence unless "ordinary care" implies that a prudent person would not rely upon the attorney's title opinion but would hire a second attorney to check the work of the first, "an expensive and impractical duplication, clearly destructive of the confidential relationship between the practitioner and his client."

*Id.* at 1192. But the *Anderson* court was addressing whether an attorney's title review, not obviously problematic on its face, should trigger the running of the statute of limitations despite the client's lack of awareness of any problem. After considering the nature of the attorney-client relationship, the court adopted a "discovery rule" under which the statute of limitations is triggered by circumstances in which the client knew *or should have known* of the malpractice. Thus, while the court acknowledged a public policy interest in avoiding actions destructive to the trust relationship, the court adopted a sensible rule for determining when the client must accept responsibility for awareness of negligence—when she knew or should have known of the attorney's negligence.

We think this principle is equally applicable in this context, and we see no reason why Maine courts would not extend it to malpractice cases. Thus, we believe that Maine law would not require a party to seek a second opinion without independent indications of attorney failures sufficient to cause a reasonable person to act. But the client may not ignore repeated indications that her attorney is inadequately performing over an extended period of time. *See Quinn v. Moore,* 292 A.2d 846, 850 (Me. 1972) (under the usual rule, negligence is gauged by the ability to anticipate a harm). Extension of a public policy bar to proof of such inadequate performance would contradict Maine's general rule that a plaintiff is not free to rely on another's performance— i.e. her lawyer's performance—of his duty, but must act reasonably to protect her own interests. *See Isaacson,* 297 A.2d at 103.

This approach is, moreover, consistent with precedent from other jurisdictions. All of the courts that have considered the issue have held that the defense of contributory negligence applies in legal malpractice actions, despite the fiduciary nature of the attorney-client relationship. *See* R. Mallen & J. Smith, *Legal Malpractice* § 17.2 at 2 (3d ed. 1989) (citing cases). Some courts have been reluctant to force clients to supervise every action of an attorney, *see, e.g., Cicorelli v. Capobianco,* 453 N.Y.S.2d 21, 22, 89 A.D.2d 842 (1982) (real estate developer not contributorily negligent for failing to pursue rezoning and pay property taxes where attorney ad-

vised that had no further obligations under contract); *Theobald v. Byers*, 13 Cal.Rptr. 864, 866–67, 193 Cal.App.2d 147 (1961) (contributory negligence is a defense in attorney malpractice action, but failure to consult second attorney to verify what first was hired to do is insufficient as a matter of law to support the defense). But these cases do not suggest that a course of (mis)conduct by an attorney should never place an obligation on a client to fire the attorney.

■ In this case, there was evidence of repeated failures by Burgess to represent Pinkham adequately over a period of years from which jurors could have concluded that the reasonable person would have fired him prior to December 1985, when his ultimate negligence resulted in the adverse grant of summary judgment. Indeed, Pinkham's own letters to Burgess suggest that she was aware that she had been making excuses for his conduct for some time. *See* App. at 49–52 (Letters of April 27, 1985 and May 14, 1985). Moreover, Pinkham testified that as early as May 1984 she contacted an attorney because she believed Burgess was committing malpractice. She testified that she did not fire Burgess because she could find no one else to take the case. The jury, however, was entitled to disbelieve the adequacy of her efforts and to find that she could have located another attorney on a contingency basis had she persisted. And Pinkham's own expert witness testified that the case was still salvageable in 1984 and that nothing precluded her from firing the defendant at that time. We therefore find that there was sufficient evidence for a jury to conclude that Pinkham was comparatively negligent in failing to protect her own interests.

Pinkham makes one final effort to avoid the jury's finding of comparative negligence. She argues that comparative negligence is not a defense to a claim of reckless infliction of emotional distress. Therefore, she suggests, if the evidence would have supported that claim, she should be entitled to the full value of her damages.

■ This argument cannot withstand scrutiny. Even assuming there was sufficient evidence to support a jury finding of reckless infliction of emotional distress and that Maine law prevents the defense of comparative negligence on such claims, there is still no indication that the jury found the defendant acted recklessly. The jury awarded emotional distress damages without stating whether it found the defendant's conduct to be reckless or simply negligent. Pinkham is not entitled to prevail based on the mere possibility that the jury ruled in the manner favorable to her argument. *Cf. McLain v. Training and Dev. Corp.*, 572 A.2d 494, 497 (Me.1990) (jury separately found liability under both theories, so obligation was on the defendant to request apportionment).

Moreover, the plaintiff never requested that the jurors be asked to distinguish between the two theories. She also failed to object to the jury charge, which did not inform the jury that it could not find comparative negligence if it found reckless infliction of emotional distress. Thus, in effect, she waived this argument.

*Affirmed. Plaintiff shall receive two-thirds of her costs.*