April 11, 1994 UNITED STATES COURT OF APPEALS
UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 93-1431

NEWELL PUERTO RICO, LTD.,
Plaintiff-Appellee,

v.

RUBBERMAID INCORPORATED,
Defendant-Appellant.

No. 93-1451
93-1516

NEWELL PUERTO RICO, LTD.,
Plaintiff-Appellant,

v.

RUBBERMAID INCORPORATED,
Defendant-Appellee.

ERRATA SHEET

The opinion of this Court issued on March 31, 1994, is
amended as follows:

Page 7, line 8, it should read "Mr. Villamil's testimony"
instead of "Mr. Newell's testimony."

Page 11, first line, insert after "1991)" and before the
period "(quoting Freeman v. Package Machinery Co., 865 F.2d 1331,

1340 (1st Cir. 1988))."

UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 93-1431

NEWELL PUERTO RICO, LTD.,

Plaintiff-Appellee,

v.

RUBBERMAID INCORPORATED,

Defendant-Appellant.

Nos. 93-1451
93-1516

NEWELL PUERTO RICO, LTD.,

Plaintiff-Appellant,

v.

RUBBERMAID INCORPORATED,

Defendant-Appellee.

APPEALS FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Jos Antonio Fust , U.S. District Judge]

Before

Torruella, Circuit Judge,

Coffin, Senior Circuit Judge,

and Boudin, Circuit Judge.

Miguel E. Bonilla-Sierra, with whom Carlos T. Gonz lez-

Contreras, Maricarmen Almod var-D az and Gonz lez, Bonilla &

Qui ones-Tridas, were on brief for Rubbermaid Incorporated.

Adri n Mercado, with whom Mercado & Soto, was on brief for

Newell Puerto Rico, Ltd.

March 31, 1994

-2-

TORRUELLA, Circuit Judge. Plaintiff-appellee, Newell

Puerto Rico, Ltd. ("Newell"), brought an action for damages

against Rubbermaid Incorporated ("Rubbermaid"), alleging that

Rubbermaid, without just cause, terminated and impaired the

exclusive distribution agreement between the two parties in

violation of the Puerto Rico Dealers' Act, commonly known as "Law

75." P.R. Laws Ann. tit. X, 278 et seq. (1989 Supp.). The

action was tried before a jury. The jury found that Rubbermaid

terminated the distribution agreement without just cause and

awarded Newell $1,400,000 in damages. Rubbermaid then filed a

motion for a new trial. The district court denied Rubbermaid's

motion and entered judgment against Rubbermaid. Rubbermaid now

appeals the court's denial of its motion for a new trial.

Specifically, Rubbermaid argues that (1) the district court

abused its discretion in admitting certain testimony by one of

Newell's expert witnesses, and (2) the jury's finding on the

issue of just cause was against the clear weight of the evidence.

Newell also filed a motion requesting pre and post-

judgment interest and attorneys' fees. The court granted

Newell's motion for post-judgment interest but denied its motion

for pre-judgment interest and attorneys' fees. Newell appeals

the court's denial of pre-judgment interest and attorneys' fees.

BACKGROUND

We review the evidence and draw inferences therefrom in

-3-

the light most favorable to the verdict winner in this case,

Newell. International Adhesive Coating Co. v. Bolton Emerson

Int'l, Inc., 851 F.2d 540, 542 (1st Cir. 1988).

A. The Distribution Agreement

On May 31, 1968, Rubbermaid entered into an agreement

with Anchor Hocking Interamericana, Ltd. for the exclusive

distribution of the Rubbermaid Houseware Product Line in Puerto

Rico and the United States Virgin Islands ("Distribution

Agreement"). On March 28, 1972, Anchor Hocking Interamericana,

Ltd. assigned and transferred its rights in the Distribution

Agreement to Anchor Hocking Puerto Rico, Ltd. ("Anchor P.R.").1

From July 2, 1972 to July 1, 1987, Anchor P.R., became the

exclusive distributor of Rubbermaid Houseware Products in Puerto

Rico and the Virgin Islands. On July 2, 1987, Newell Company

acquired Anchor Hocking Corporation and its subsidiaries,

including Anchor P.R. and thereafter continued the distribution

of Rubbermaid products in Puerto Rico and the Virgin Islands.

On October 31, 1991, Rubbermaid notified Newell that it

was terminating the Distribution Agreement, effective in ninety

days, because Anchor P.R. had been unable to achieve assigned

sales objectives and because Newell manufactured and distributed

similar products which created a conflict of interest in its

distribution of Rubbermaid products. Rubbermaid then terminated

1 Anchor Hocking Puerto Rico, Ltd. was a wholly owned subsidiary
of Anchor Hocking Corporation which was incorporated in Delaware
on March 27, 1972, for the purpose of acquiring and selling
products in Puerto Rico.

-4-

the Distribution Agreement. The effective date of termination

was February 3, 1992. Anchor P.R. changed its name to Newell

Puerto Rico, Ltd. In February 1992, Newell brought suit against

Rubbermaid, claiming that Rubbermaid's termination of the

Distribution Agreement was unjustified.

B. Expert Witness Testimony

During the course of discovery, in June 1992, Newell's

expert witness on damages, Mr. Jos Villamil, submitted a written

report estimating Newell's damages under Law 75. In July 1992,

Rubbermaid's expert, Dr. El as R. Guti rrez, submitted a report

challenging the accuracy of the valuation estimate presented by

Mr. Villamil, and questioning whether the estimate was prepared

according to acceptable professional standards. Doctor Guti rrez

concluded that major flaws were present in the methods used by

Mr. Villamil to estimate damages, and these flaws had the effect

of producing an upward bias in the estimated value of damages for

the Rubbermaid line of products.2

During his first deposition on August 11, 1992,

Mr. Villamil acknowledged that he inadvertently included the

value of the Rubbermaid Commercial Products Line, which is not at

issue in this case, in his valuation of damages.3 Accordingly,

Mr. Villamil agreed to adjust his estimate and submit an amended

2 Doctor Guti rrez estimated damages, including a goodwill
component, to be between $247,686 and $269,431.

3 The Distribution Agreement which is the subject of this
lawsuit concerns the Rubbermaid Houseware Products Line. The
Rubbermaid Commercial Products Line is a separate and distinct
line of products not relevant to this case.

-5-

report reflecting his new evaluation. On August 13, 1992, four

days prior to trial, Mr. Villamil submitted an amended report.4

According to Rubbermaid, this amended report included new

calculations using a methodology and valuation procedure

different from that used in Mr. Villamil's previous report. On

August 13, the court ordered that both experts be deposed anew

and that transcripts of the depositions be filed not later than

August 27, 1992. The Court further determined that it would

appoint an economist to render a neutral expert report. Trial

was rescheduled for December 21, 1992.

Mr. Villamil was deposed again on August 20, 1992.

During this deposition, Mr. Villamil again acknowledged that

corrections should be made to his calculations. On August 27,

1992, Rubbermaid filed a "Motion to Disqualify Plaintiff's Expert

Witness, Exclude Plaintiff's Expert Witness Reports and Request

for Sanctions." The court denied this motion.

On December 8, 1992, the court appointed expert, Ernst

& Young, rendered a report which included a review of the

different reports filed by the expert witnesses for the parties

and an independent calculation of a value or a range of values of

damages for the distribution agreement under Law 75. On January

19, 1993, due to additional information provided by counsel for

Newell, Ernst & Young supplemented the December 8 report. On

4 In his amended report, Mr. Villamil estimated damages, not
including goodwill, to be between $1,620,000 and $2,941,000. He
estimated goodwill at $1,013,749 and therefore, the total value
of the distribution of the Rubbermaid product line in Puerto Rico
at between $2,633,749 and $3,954,749.

-6-

February 2, 1993, Ernst & Young submitted a final report.5

During trial, the court heard testimony from Ernst &

Young regarding its report. Mr. Villamil then testified as an

expert for Newell. At trial, Rubbermaid expressly conceded that

Mr. Villamil was qualified as an expert. Mr. Villamil testified

that he believed his role was to evaluate Ernst & Young's report.

Rubbermaid objected to Mr. Villamil's testimony on the grounds of

surprise, arguing that his expressed views were different from

and inconsistent with the opinions rendered in his reports. The

court overruled the objection and permitted Mr. Villamil to

testify.

ADMISSION OF EXPERT TESTIMONY

Rubbermaid challenges the admission at trial of

Mr. Villamil's testimony on grounds of surprise. Federal Rule of

Civil Procedure 60(b)(1); P rez-P rez v. Popular Leasing Rental,

Inc., 993 F.2d 281, 283 (1st Cir. 1993).

At the time of Mr. Villamil's testimony, Rubbermaid's

counsel objected on the ground that Mr. Villamil was presenting

new computations to the jury not contained in his first or second

report. The court overruled Rubbermaid's objection, indicating

that Mr. Villamil was entitled to criticize constructively Ernst

& Young's report. When ruling on Rubbermaid's objection, the

district court stated that Rubbermaid was entitled to "cross-

examine him in light of not only this analysis he is making here

5 The court appointed expert estimated the present value of lost
pre-tax profits at $585,951.

-7-

today but in relation to the analysis he has made previously of

the reports you have rendered and which you have a copy and which

were the object of the deposition."

Rubbermaid knew that Mr. Villamil was going to be an

expert witness at trial. Moreover, Rubbermaid was very familiar

with the subject matter upon which he would render his testimony.

Rubbermaid had ample opportunity to cross-examine Mr. Villamil.

Even if Rubbermaid had been surprised by Mr. Villamil's

testimony, the appropriate remedy would have been to ask for a

continuance to allow Rubbermaid to prepare for the presentation

of rebuttal testimony. Szeliga v. General Motors Corp., 728 F.2d

566 (1st Cir. 1984) (the remedy for surprise in the introduction

of evidence is not to seek reversal after an unfavorable jury

verdict, but a request for continuance at the time surprise

occurs). Rubbermaid did not request a continuance, a sidebar or

even a limiting jury instruction. See Smith v. Massachusetts

Institute of Technology, 877 F.2d 1106 (1st Cir. 1989), cert.

denied, 493 U.S. 965 (1989) (courts look with disfavor on parties

who claim surprise but who do not ask for a recess so they may

attempt to counter the opponent testimony).

Rubbermaid also claims that Mr. Villamil's testimony

was inadmissible pursuant to Fed. R. Evid. 702, 703, 705 and 403

and Fed. R. Civ. P. 26(e). We find Rubbermaid's claims to be

without merit.

The admissibility of opinion evidence by experts is a

matter within the discretion of the trial court and its

-8-

determination of admissibility should be sustained unless clearly

erroneous. International Adhesive Coating Company, 851 F.2d at

544. Federal Rules of Evidence 7026 and 7037 "allow an expert

to present scientific or technical testimony in the form of

opinion based on facts or data perceived or made known to the

expert before or at trial." Da Silva v. American Brands, Inc.,

845 F.2d 356, 360 (1st Cir. 1988). Once admitted, Rules 703 and

7058 then "place the full burden of exploration of the facts and

assumptions underlying the testimony of an expert witness

6 Federal Rule of Evidence 702 provides:

If scientific, technical, or other
specialized knowledge will assist the
trier of fact to understand the evidence
or to determine a fact in issue, a
witness qualified as an expert by
knowledge, skill, experience, training,
or education, may testify thereto in the
form of an opinion or otherwise.

7 Federal Rule of Evidence 703 provides:

The facts or data in the particular case
upon which an expert bases an opinion or
inference may be those perceived by or
made known to the expert at or before the
hearing. If of a type reasonably relied
upon by experts in the particular field
in forming opinions or inferences upon
the subject, the facts or data need not
be admissible in evidence.

8 Federal Rule of Evidence 705 provides:

The expert may testify in terms of
opinion or inference and give reasons
therefor without prior disclosure of the
underlying facts or data, unless the
court requires otherwise. The expert may
in any event be required to disclose the
underlying facts or data on cross-
examination.

-9-

squarely on the shoulders of opposing counsel's cross-

examination." International Adhesive Coating Company, 851 F.2d

at 544-45 (quoting Smith v. Ford Motor Co., 626 F.2d 784 (10th

Cir. 1980)).

[I]f in arriving at his opinion the
expert has reasonably relied on facts or
data before trial, the basis for the
opinion need not be disclosed as a
condition to admitting testimony. The
burden is on opposing counsel through
cross-examination to explore and expose
any weaknesses in the underpinnings of
the expert's opinion. . . . Moreover,
the fact that an expert's testimony may
be tentative or even speculative does not
mean that the testimony must be excluded
so long as opposing counsel has an
opportunity to attack the expert's
credibility. When the factual
underpinning of an expert opinion is
weak, it is a matter affecting the weight
and credibility of the testimony -- a
question to be resolved by the jury.

International Adhesive Coating Company, 851 F.2d at 544

(citations omitted).

The district court has broad discretion to decide

whether evidence should be excluded under Rule 403.9 "[O]nly

rarely -- and in extraordinarily compelling circumstances -- will

we, from the vista of a cold appellate record, reverse a district

9 Federal Rule of Evidence 403 provides:

Although relevant, evidence may be
excluded if its probative value is
substantially outweighed by the danger of
unfair prejudice, confusion of the
issues, or misleading the jury, or by
considerations of undue delay, waste of
time, or needless presentation of
cumulative evidence.

-10-

court's . . . judgment concerning the relative weighing of

probative value and unfair effect." Pinkham v. Burgess, 933 F.2d

1066, 1071 (1st Cir. 1991) (quoting Freeman v. Package Machinery

Co., 865 F. 2d 1331, 1340 (1st Cir. 1988)). The district court's

refusal to exclude Mr. Villamil's testimony under Rule 403 does

not present such an extraordinary circumstance. Rubbermaid

suggests that Mr. Villamil's testimony had the effect of

confusing and misleading the jury and should have been excluded

under Rule 403. We disagree. Mr. Villamil was Newell's only

expert as to damages. Newell was entitled to present witnesses

on the issue of damages. At trial, Rubbermaid conceded Mr.

Villamil's qualifications as an expert in this area. Juries are

often asked to determine complex issues of fact after listening

to expert testimony. Rubbermaid was able to cross-examine both

Mr. Villamil and the Ernst & Young expert as to their testimony

and to present testimony by its own expert witness on the issue

of damages. In light of these factors, we do not believe the

district court abused its discretion in determining that Mr.

Villamil's testimony had substantial probative value that was not

outweighed by unfair prejudice and should not be excluded under

Rule 403.

Rubbermaid's argument that Mr. Villamil's testimony was

inadmissible pursuant to Fed. R. Civ. P. 26(e)10 is equally

10 Federal Rule of Civil Procedure 26(e) states:

Supplementation of Responses. A party

who has responded to a request for
discovery with a response that was

-11-

without merit. In essence, Rubbermaid argues that Mr. Villamil's

opinion testimony proffered during trial was different from the

opinions he rendered during the pretrial litigation and that

Newell failed to supplement and amend its discovery responses as

required by Rule 26(e) to reflect those differences.

"[I]n reviewing a contention that answers were not

properly supplemented within the strictures of Rule 26(e), a

court should look to the conduct of the trial, the importance of

the evidence to its proponent, and the ability of the [opposing

complete when made is under no duty to
supplement the response to include
information thereafter acquired, except
as follows:

(1) A party is under a duty seasonably
to supplement the response with respect
to any question directly addressed to (A)
the identity and location of persons
having knowledge of discoverable matters,
and (B) the identity of each person
expected to be called as an expert
witness at trial, the subject matter on
which the person is expected to testify,
and the substance of the person's
testimony.

(2) A party is under a duty seasonably
to amend a prior response if the party
obtains information upon the basis of
which (A) the party knows that the
response was incorrect when made, or (B)
the party knows that the response though
correct when made is no longer true and
the circumstances are such that a failure
to amend the response is in substance a
knowing concealment.

(3) A duty to supplement responses may
be imposed by order of the court,
agreement of the parties, or at any time
prior to trial through new requests for
supplementation of prior responses.

-12-

party] to formulate a response." Thibeault v. Square D Co., 960

F.2d 239, 244 (1st Cir. 1992) (internal citation and quotations

omitted). It is not unusual for experts to make changes in their

opinions and revise their analyses and reports frequently in

preparation for, and sometimes even during, a trial. In the

present case, the parties did not stipulate that they would

accept without question the findings of Ernst & Young, the court

appointed expert. Newell was therefore entitled to have its

expert, Mr. Villamil, criticize the Ernst & Young report and

testimony in an attempt to discredit that report and testimony.

Mr. Villamil was Newell's only expert on damages, hence, Mr.

Villamil's testimony was a very important part of Newell's case.

If counsel for Rubbermaid felt ill-prepared to cross-examine Mr.

Villamil when faced with his testimony at trial, counsel's

solution was to request a continuance. Rubbermaid's failure to

do so will not now result in a new trial.

JURY'S FINDING OF JUST CAUSE

A federal judge may grant a new trial where the jury's

verdict is against the clear weight of the evidence. Kearns v.

Keystone Shipping Co., 863 F.2d 177, 181 (1st Cir. 1988) (citing

11 C. Wright & A. Miller, Federal Practice and Procedure 2806

(1973)). A trial court should set aside a jury verdict only to

prevent a miscarriage of justice. Kearns, 863 F.2d at 181. We

review the district court's refusal to grant Rubbermaid's motion

for a new trial for an abuse of discretion. Id. at 179; Fed. R.

Civ. P. 59(a). So long as a reasonable basis exists for the

-13-

jury's verdict, we will not disturb the district court's ruling

on appeal. Grenada Steel Industries, Inc. v. Alabama Oxygen Co.,

695 F.2d 883 (5th Cir. 1983). Mere disagreement with the verdict

will not justify the granting of a new trial. Keeler v. Hewitt,

697 F.2d 8, 11 (1st Cir. 1982). After carefully reviewing the

record below, we find no abuse of discretion in the district

court's decision not to disturb the jury's finding that

Rubbermaid failed to establish just cause for terminating its

contract with Newell.

In its complaint, Newell alleged that Rubbermaid's

termination of the Distribution Agreement was without just cause.

Newell further alleged that actions taken by Rubbermaid in

violation of the Distribution Agreement caused a decline in

Newell's annual sales of Rubbermaid products. According to

Newell, Rubbermaid took actions which were detrimental to the

established relationship and which violated the Distribution

Agreement by:

1. making direct sales to retailers;

2. imposing unreasonable sales quotas on Newell;

3. reclassifying some of its housewares products to

take them out of the Distribution Agreement; and

4. delaying and refusing to service orders placed by

Newell.

The Puerto Rico Dealer's Contract Act, P.R. Laws Ann.

tit. 10, 278-278d (1976), known as "Law 75," prohibits a

supplier from unilaterally terminating a distribution agreement

-14-

with a dealer or refusing to renew it on its normal expiration

except for "just cause." 10 L.P.R.A. 278a. Law 75 was enacted

to prevent suppliers from terminating dealers in Puerto Rico once

these dealers had invested in the business to create and build a

profitable market for the suppliers' products. L neas A reas

Costarricenses, S.A. v. Caribbean General, Inc., 682 F. Supp. 117

(D. P.R. 1988) (citing Warner Lambert v. Tribunal Superior, 101

D.P.R. 378, 101 P.R.R. 527 (1973)).

As noted, Law 75 permits a supplier to terminate a

distribution agreement for just cause. Section 278(d) of the Act

defines "just cause" as follows:

nonperformance of any of the essential
obligations of the dealer's contract on
the part of the dealer, or any action or
omission on his part that adversely and
substantially affects the interest of the
principal or grantor in promoting the
marketing or distribution of the
merchandise or service.

By its terms, Law 75 sets forth a variety of

circumstances under which, once a dealer has shown that the

supplier terminated its contract, the supplier bears the burden

of showing just cause for the termination. Section 278a-1 of the

Act, which bears the heading, Just cause for termination;

exceptions; presumptions, sheds light on the mechanics of the

just cause exception. Section 278a-1(a) of the Act establishes

that certain violations or nonperformance by a dealer of any

provision included in the dealer's contract "shall not be

considered as being just cause unless the principal or grantor

shows that such nonperformance may affect, or has truly and

-15-

effectively affected the interests of such principal or grantor

in an adverse or substantial manner in the development of the

market, distribution of the merchandise or rendering of services"

(emphasis added). Hence, under this section, in order to show

just cause, the supplier bears the burden of showing that the

dealer's violations or nonperformance of the contract adversely

affected the suppliers interests.

It is uncontested that Rubbermaid unilaterally

terminated the Distribution Agreement. Rubbermaid sought to show

just cause under Law 75 by arguing that termination was justified

because Newell failed to achieve assigned sales objectives and

experienced a decline in sales of Rubbermaid products, and that

Newell's sale of other product lines, not related to Rubbermaid,

created a conflict of interest detrimental to the Distribution

Agreement between Newell and Rubbermaid and therefore, adversely

affected Rubbermaid's interests. Newell presented evidence to

counter these allegations from which the jury could reasonably

conclude that Rubbermaid did not have just cause to terminate the

Distribution Agreement. Newell's evidence included testimony to

the effect that any decline in Rubbermaid sales by Newell was

caused by Rubbermaid's own actions in violation of the

Distribution Agreement. In particular, Newell presented evidence

indicating that Rubbermaid was selling products directly to

Pitusa (a retail store in Puerto Rico) at the same price it sold

to Newell, undercutting the ability of Newell to compete on the

Puerto Rican market for sales of Rubbermaid products. Newell

-16-

also presented evidence indicating that plastic houseware

products manufactured by Newell which, according to Rubbermaid,

created a conflict of interest with Rubbermaid products, had been

manufactured by Anchor P.R. since 1968 and competed with

Rubbermaid products for the entire span of the contract.

Newell's evidence indicated that there was no new competition

introduced by the Newell acquisition of Anchor P.R. or any other

conflict in interest that would justify termination of the

Distribution Agreement.

Newell also presented evidence to the effect that its

assigned sales objectives did not adjust to the realities of the

Puerto Rican market. This evidence included testimony to the

effect that the sales objectives were unreasonable. Newell also

presented evidence to the jury in the form of an analysis of its

sales activities from 1986 to 1990. The analysis purported to

show that Newell's sales were adversely affected by several

factors, including Hurricane Hugo and direct sales by Rubbermaid,

but that overall, the company was successfully selling Rubbermaid

products.

Section 278a-1(c) establishes that where a dealer

violates a provision in the agreement fixing rules of conduct or

setting distribution quotas or goals because it does not adjust

to the realities of the Puerto Rican market at the time, the

violation will not be deemed just cause and "[t]he burden of

proof to show the reasonableness of the rule of conduct or of the

quota or goal fixed shall rest on the principal or grantor."

-17-

Under this section, once Newell presented evidence showing that

the assigned sales objectives did not adjust to the realities of

the Puerto Rican market, it was Rubbermaid's burden to show the

reasonableness of the sales objectives. In finding against

Rubbermaid, the jury concluded that Rubbermaid did not meet its

burden. Judging the credibility of the witnesses and weighing

the evidence are within the exclusive province of the jury.

United States v. Garc a, 995 F.2d 556, 561 (5th Cir. 1993);

Lessee of Ewing v. Burnet, 36 U.S. 41 (1837). We will not

substitute our judgment for that of the jury in its evidentiary

findings. After reviewing the record, we conclude that the

jury's verdict is not against the clear weight of the evidence.

ATTORNEYS' FEES & PRE-JUDGMENT INTEREST

Newell appeals the district court's denial of its

motion for attorneys' fees and pre-judgment interest. Puerto

Rico Rule 44.1(d) on attorneys' fees and 44.3(b) on pre-judgment

interest are rules of decision that should be applied by the

Federal Court sitting in diversity. De Le n L pez v. Corporaci n

Insular de Seguros, 931 F.2d 116, 126 (1st Cir. 1991); Pan

American World Airways, Inc. v. Ramos, 357 F.2d 341, 342 (1st

Cir. 1966) (Puerto Rico Rules of Civil Procedure 44.1(d) and

44.3(b) are a matter of substantive law to be applied by the

federal court sitting in diversity). The decision to award such

fees is within the discretion of the district court and we will

only disturb its ruling where there has been an abuse of that

discretion. De Le n L pez, 931 F.2d at 126-27.

-18-

Under Rule 44.3(b) and 44.1(d) of the Puerto Rico Rules

of Civil Procedure, imposition of pre-judgment interest and

attorney's fees on the non-prevailing party is mandatory where

the party was obstinate and stubbornly litigious. Rule 44.3(b)

on pre-judgment interest provides:

(b) Except when the defendant is the
Commonwealth of Puerto Rico, its
municipalities, agencies,
instrumentalities or officers acting in
their official capacity, the court will
also impose on the party that has acted
rashly the payment of interest at the
rate fixed by the Board by virtue of the
previous subsection which is in effect at
the moment the judgment is pronounced,
from the time the cause of action arises
in every case of collection of money and
from the time the claim is filed in
actions for damages until the date
judgment is pronounced, to be computed on
the amount of the judgment. The interest
rate shall be stated in the judgment.

P.R. Laws Ann. tit. 32, App. III, Rule 44.3(b) (1989 Supp.).

Rule 44.1(d) on attorney's fees states:

In the event any party or its lawyer has
acted obstinately or frivolously, the
court shall, in its judgment, impose on
such person the payment of a sum for
attorney's fees which the court decides
corresponds to such conduct.

P.R. Laws Ann. tit. 32, App. III, Rule 44.1(d) (1989 Supp.).

A party is obstinate under Rule 44.1(d) if it engages

in actions which (a) make necessary litigation which could have

been avoided, (b) prolongs the litigation unnecessarily, or (c)

requires the other party to incur expenses in the pursuit of

avoidable tasks. Fern ndez Mari o v. San Juan Cement Co. Inc.,

118 D.P.R. 713, 718-19 (1987); De Le n L pez, 931 F.2d at 126.

-19-

In ruling on Rubbermaid's motion for attorneys' fees

and pre-judgment interest the district court stated:

We are not convinced that the defendant,
Rubbermaid, Inc., acted rashly or
contumaciously in defending from this Law
75 Dealer's Act suit. A reasonable
reviewer of this record may conclude that
the defendant's case presented plausible
positions that merited contract
termination. The fact that the jury
elected otherwise is not indicative of
contumacious conduct on the part of the
defendant.

After reviewing the record, we agree with the district

court in its conclusion that Rubbermaid did not act rashly or

contumaciously in defending this suit. Rubbermaid presented

evidence in support of its defense, indicating that Newell

experienced a decline in sales of Rubbermaid products and failed

to meet assigned sales objectives. Rubbermaid also presented

evidence to the effect that Newell's policies as to the pricing

of Rubbermaid products and Newell's sale of houseware plastics

that were not manufactured by Rubbermaid adversely affected

Rubbermaid's interests. The district court did not abuse its

discretion in denying Newell's motion for attorneys' fees and

pre-judgment interest.

Affirmed.

-20-